[No. B221002. Second Dist., Div. Four. June 28, 2010.]

BAISHALI DAS, Plaintiff and Appellant, v.
BANK OF AMERICA, N.A., Defendant and Respondent.

Counsel

Baishali Das, in pro. per., for Plaintiff and Appellant.

Severson & Werson, Chaise R. Bivin, Eduardo Martorell and Jan T. Chilton for Defendant and Respondent.

## OPINION

MANELLA, J.—Appellant Baishali Das asserted claims based on the elder abuse statutes (Welf. & Inst. Code, § 15600 et seq.), alleging that respondent Bank of America, N.A., failed to report financial abuse involving her father (now deceased), and engaged in other misconduct regarding him.[1] After sustaining demurrers to appellant's claims without leave to amend, the trial court entered a judgment of dismissal. Although appellant's complaints vividly depict the reprehensible victimization of her father by third parties, they allege no facts supporting claims against respondent. We therefore affirm.

## FACTS

Appellant's original and first amended complaints allege the following facts: Kaustubh K. Das, appellant's father, was born in 1933.[2] In August 2004, Kaustubh experienced a stroke or strokes. He was found to have brain tumors, and developed ischemic vascular dementia. His ability to move and speak was impaired; he experienced deficits in language, communication, reasoning, personality, and judgment; and he experienced mood swings. As a result, his ability to assess the consequences of his actions and the motivations of other people was "severely compromised," as was his capacity to manage his finances. In addition, Kaustubh experienced problems with drooling, acted in a confused and disorganized manner, and used a wheelchair. Some or all of his deficiencies were "readily apparent to the eyes of even casual observers."

In late 2006 or early 2007, Kaustubh committed himself to a series of real estate transactions. In the course of these transactions, he obtained a "suspicious" $105,000 mortgage loan from respondent bank regarding a parcel of property in Georgia. Within a short period of time, he became delinquent on the loan payments, and respondent foreclosed on the property.

As a result of the loss of the property, Kaustubh became despondent, and his condition deteriorated. In attempting to achieve a financial recovery, he fell prey to a series of illegal lottery scams. The perpetrators of these scams lured their victims with promises of lottery winnings, and instructed the victims to pay taxes by wire in order to claim their prizes. In connection with the scams, Kaustubh liquidated his assets, placed the funds in his accounts held by respondent, and repeatedly instructed respondent to transfer sums to

---

[1] All further statutory citations are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Because appellant and her father share a surname, we refer to him by his first name, with no disrespect intended.

bank accounts in other countries. Respondent complied with his instructions. The transferred sums exceeded $300,000.

In arranging the transfers, Kaustubh requested "hundreds" of blank wire forms, and some of respondent's employees "wonder[ed]" about his state of mind. Despite the suspicious nature of the transfers, respondent never made a report of suspected financial abuse to a local law enforcement or adult protective agency, as required under the elder abuse statutes (§ 15630.1, subd. (d)(1)). After the last transfer in June 2008, Kaustubh became depressed, suffered massive organ failure, and died in August 2008.

## PROCEDURAL BACKGROUND

Kaustubh's daughter, appellant Das, initiated the underlying action in April 2009. Her original complaint contained seven causes of action, six of which were predicated on the elder abuse statutes. The first of the latter claims alleged that respondent had breached its fiduciary duties by making a loan to Kaustubh while negligently or intentionally ignoring the financial risks it posed to him. The claim asserted that the loan was therefore "predatory" and constituted financial abuse of an elder. The remaining claims based on the elder abuse statutes alleged that Kaustubh suffered injury due to respondent's failure to report suspected financial abuse in connection with the transfers of funds. In this regard, the sixth claim asserted that respondent's alleged reporting failures caused Kaustubh severe pain and suffering. The seventh claim alleged that respondent's conduct constituted negligent infliction of emotional distress on Kaustubh. On August 14, 2009, Los Angeles Superior Court Judge Raul A. Sahagun sustained respondent's demurrer to appellant's original complaint, and granted her leave to amend only the first and sixth causes of action.

Appellant's first amended complaint contained two claims resembling the first and sixth causes of action in her original complaint, with no material modifications of the alleged facts. On November 13, 2009, Los Angeles Superior Court Judge Thomas I. McKnew sustained respondent's demurrer to both claims of the first amended complaint and denied leave to amend. A judgment of dismissal was entered November 30, 2009. This appeal followed.

## DISCUSSION

Appellant contends the trial court erred in determining that her claims predicated on the elder abuse statutes fail as a matter of law.[3] For the reasons explained below, we disagree.

---

[3] Appellant does not challenge the sustaining of the demurrer to her original complaint's seventh cause of action for negligent infliction of emotional distress. Additionally, while

## A. Standards of Review

"Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation.] . . . Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether' or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151], fn. omitted.) "Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. [Citation.]" (*Id.* at p. 879, fn. 9.)

Under the first standard of review, "we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation], and we may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken. [Citation.]" (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947 [36 Cal.Rptr.2d 360].)

Under the second standard of review, the burden falls upon the plaintiff to show what facts he or she could plead to cure the existing defects in the complaint. (*Cantu v. Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 890.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action." (*Ibid.*)

## B. Elder Abuse Statutes

We begin by examining the elder abuse statutes material to appellant's contentions. Since 1982, the Legislature has enacted numerous measures to

appellant's briefs characterize the trial court's rulings on matters other than the demurrers in unfavorable terms, with a single exception discussed below, she presents no argument that these rulings were erroneous. Accordingly, she has forfeited all such contentions. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 844, fn. 3 [68 Cal.Rptr.3d 828].)

Pointing to *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301 [70 Cal.Rptr.3d 691] (*Barthold*), appellant maintains that Judge McKnew improperly denied her request for reconsideration of Judge Sahagun's ruling on the demurrer to her original complaint. We see no error. In *Barthold*, the appellate court concluded that in some circumstances, a judge may properly reconsider his or her own ruling when prompted by a party. (*Id.* at pp. 1308–1310.) As nothing in *Barthold* suggests that a judge *must* reexamine another judge's ruling at the request of a party, Judge McKnew's decision not to revisit the demurrer to the original complaint was not improper.

prevent the abuse of elders. (See *ARA Living Centers - Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1559–1560 [23 Cal.Rptr.2d 224]; *Zimmer v. Nawabi* (E.D.Cal. 2008) 566 F.Supp.2d 1025, 1033–1034.) Generally, "the Legislature has proceeded carefully and diligently in its effort to curb the worst practices against our elders." (Balisok, Elder Abuse Litigation (The Rutter Group 2009) ¶ 1:22, p. 1-3 (rev. # 1, 2009).)

■ Pertinent here are section 15610.30, which defines " '[f]inancial abuse' of an elder," and section 15657.5, which identifies remedies for financial abuse.[4] As effective during the events alleged in appellant's complaints (2006–2008), former section 15610.30 provided: "(a) 'Financial abuse' of an elder . . . occurs when a person or entity does any of the following: [¶] (1) Takes, secretes, appropriates, or retains real or personal property of an elder . . . to [*sic*] a wrongful use or with intent to defraud, or both. [¶] (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder . . . to [*sic*] a wrongful use or with intent to defraud, or both. [¶] (b) A person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." Furthermore, during the period in question, former section 15657.5 provided that in proven instances of financial abuse, a court could properly award attorney's fees, costs, and damages in excess of enumerated statutory limits, "in addition to all other remedies otherwise provided by law."[5]

■ Also pertinent here is section 15630.1, which was enacted as a provision of the Financial Elder Abuse Reporting Act of 2005 (Stats. 2005,

---

[4] Under the statutory scheme in question, an "[e]lder" means "any person residing in this state, 65 years of age or older." (§ 15610.27.) Respondent does not dispute that appellant's complaints adequately allege that her father was an elder during the underlying events.

[5] As effective during the events alleged in appellant's complaints, former section 15657.5 provided: "(a) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs. The term 'costs' includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article. [¶] (b) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, and where it is proven by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse, in addition to reasonable attorney's fees and costs set forth in subdivision (a), and all other remedies otherwise provided by law, the following shall apply: [¶] (1) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [¶] (2) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer. [¶] (c) Nothing in this section affects the award of punitive damages under Section 3294 of the Civil Code."

ch. 140, § 4). This provision declares banks and other financial institutions to be " 'mandated reporter[s] of suspected financial abuse of an elder,' " in cases of "financial abuse" as defined in accordance with section 15630. (§ 15630.1, subds. (a), (b), (c).) As mandated reporters, banks are obliged to report "suspected financial abuse" they encounter "in connection with providing financial services with respect to an elder" to local law enforcement or adult protective services agencies (§ 15630.1, subd. (d)(1)).[6] Failure to comply with this obligation may subject a bank to civil penalties (§ 15630.1, subd. (f)). Regarding the enforcement of the reporting obligation, subdivision (g) of section 15630.1 (subdivision (g)) states: "(1) The civil penalty [noted above] shall be recovered only in a civil action brought against the financial institution by the Attorney General, district attorney, or county counsel. No action shall be brought under this section by any person other than the Attorney General, district attorney, or county counsel. . . . [¶] (2) Nothing in the Financial Elder Abuse Reporting Act of 2005 shall be construed to limit, expand, or otherwise modify any civil liability or remedy that may exist under this or any other law."

■ At the outset, we note that appellant suggests her contentions are governed by section 15610.30, subdivision (b), in its current form. She is mistaken. In 2008, the Legislature amended subdivision (b) of the statute to provide: "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and *the person or entity knew or should have known that this conduct is likely to be harmful to the elder* . . . ." (Stats. 2008, ch. 475, § 1, italics added.) The amendment did not become effective until January 1, 2009, after Kaustubh's death. (See 77 West's Ann. Welf. & Inst. Code (2010 supp.) p. XXVI.) This amendment constitutes a material change in the statutory definition of financial abuse. (Balisok, Elder Abuse Litigation, *supra*, p. 8-1 (rev. # 1, 2009) ["The financial abuse statute, as amended in 2008, presents an essentially new statute."].) As the 2008 amendments to the statutory scheme were substantive, rather than procedural, and the Legislature

---

[6] Subdivision (d)(1) of section 15630.1 states: "Any mandated reporter of suspected financial abuse of an elder . . . who has direct contact with the elder . . . who reviews or approves the elder['s] . . . financial documents, records, or transactions, in connection with providing financial services with respect to an elder . . . , and who, within the scope of his or her employment or professional practice, has observed or has knowledge of an incident, that is directly related to the transaction or matter that is within that scope of employment or professional practice, that reasonably appears to be financial abuse, or who reasonably suspects that abuse, based solely on the information before him or her at the time of reviewing or approving the document, record, or transaction in the case of mandated reporters who do not have direct contact with the elder . . . , shall report the known or suspected instance of financial abuse by telephone immediately, or as soon as practicably possible, and by written report sent within two working days to the local adult protective services agency or the local law enforcement agency."

did not state that the amendments were retroactive in effect, they are inapplicable to appellant's claims. (See *ARA Living Centers - Pacific, Inc. v. Superior Court, supra,* 18 Cal.App.4th at pp. 1560–1562 [substantive amendments to elder abuse statute were not retroactive in effect, absent a clear expression of legislative intent].)

### C. *No Claim Predicated on Reporting Duty*

Appellant maintains that her complaints state claims against respondent predicated on the reporting duty imposed under section 15630.1. Her principal contention is that her allegations stated a claim for negligence per se based on respondent's alleged failure to make the required reports. In addition, she suggests that the imposition of the reporting duty enlarged respondent's exposure to tort claims based on other theories, including constructive fraud. The trial court, in sustaining respondent's demurrers, concluded that appellant had stated no claim insofar as she relied on the statutory reporting duty. On this matter, the trial court reasoned that subdivision (g) barred any such claim. We agree with the trial court.

■ As there is no reported decision examining subdivision (g), its import for appellant's claims presents an issue of statutory interpretation. In resolving this issue, our objective " 'is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning. If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]' " (*WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 538 [65 Cal.Rptr.3d 205], quoting *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].) ■ Here, subdivision (g), on its face, bars civil actions under section 15630.1 by private individuals, and further states that the section does *not* "limit, expand, or otherwise modify any civil liability or remedy that may exist under this or any other law." The provision thus expressly negates any inference of legislative intent to enlarge the legal bases for a private civil action predicated on a bank's failure to report suspected financial abuse.

Appellant contends that notwithstanding subdivision (g), the reporting duty imposed under the statute supports a claim of negligence per se. She argues that the common law doctrine of negligence per se, as codified in Evidence Code section 669 (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1350 [68 Cal.Rptr.3d 177]), displaces the operation of subdivision (g). (Welf. & Inst. Code, § 15630.1, subd. (g).) For the reasons explained below, we reject this contention.

■ Generally, " '[t]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the

standard of care in a cause of action for negligence.' [Citation.] [¶] The doctrine of negligence per se does not provide a private right of action for violation of a statute. [Citation.]" (*Johnson v. Honeywell Internat. Inc.* (2009) 179 Cal.App.4th 549, 555–556 [101 Cal.Rptr.3d 726], quoting *Millard v. Biosources, Inc., supra,* 156 Cal.App.4th at p. 1353, fn. 2.) Under the doctrine, "the plaintiff 'borrows' statutes to prove duty of care and standard of care." (179 Cal.App.4th at p. 558.)

Evidence Code section 669 provides that "negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence . . . the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. The first two elements are normally questions for the trier of fact, while the latter two elements are determined by the trial court as a matter of law. [Citation.]" (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1420 [107 Cal.Rptr.2d 50].)

■ It is unnecessary for us to determine whether appellant's allegations regarding respondent's failure to report suspected financial abuse are sufficient to trigger the presumption of negligence. Assuming—without deciding—that they would otherwise be adequate to do so, Evidence Code section 669 does not override Welfare and Institutions Code section 15630.1, subdivision (g), as Evidence Code section 669 is a statute of general application. " 'It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' " (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577 [7 Cal.Rptr.2d 245, 828 P.2d 147], quoting *Rose v. State of California* (1942) 19 Cal.2d 713, 723–724 [123 P.2d 505].)

As noted above, subdivision (g) specifically prohibits the employment of the reporting duty to "limit, *expand,* or otherwise *modify any civil liability or remedy* that may exist under . . . any other law" (italics added). This language manifests the Legistature's intent to forbid the borrowing of the reporting duty for use as a duty of care or standard of care within a negligence claim. Accordingly, the allegations in appellant's complaints do not establish a claim of negligence per se.

In view of this analysis, we also reject appellant's suggestions that the imposition of the reporting duty enlarged respondent's exposure to potential

tort claims based on other theories. Subdivision (g), by its plain language, precludes any expansion of tort liability. For this reason, the complaints do not state a claim for constructive fraud predicated on a breach of the reporting duty; in addition, the existence of a reporting duty does not place respondent within the scope of *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 436–444 [131 Cal.Rptr. 14, 551 P.2d 334], in which our Supreme Court held that psychotherapists are obliged in some circumstances to report impending criminal activity by their clients.

Appellant's reliance on *Landeros v. Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389], *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768], and *Klein v. Bia Hotel Corp.* (1996) 41 Cal.App.4th 1133 [49 Cal.Rptr.2d 60] is misplaced. In each case, the court held that a statute or regulation imposing a duty to report supported the presumption of negligence under Evidence Code section 669. In none of them, however, did the pertinent statute or regulation contain a provision affirmatively foreclosing the use of the reporting duty for purposes of a negligence claim. (*Landeros v. Flood, supra,* 17 Cal.3d at pp. 413–415 [Pen. Code, §§ 11160, 11161, former § 11161.5]; *Alejo v. City of Alhambra, supra,* 75 Cal.App.4th at pp. 1183–1190 [Pen. Code, §§ 11165–11174.3]; *Klein v. Bia Hotel Corp., supra,* 41 Cal.App.4th at pp. 1136, 1140 [Cal. Code Regs., tit. 22, § 87211].) As explained above, the inclusion of Welfare and Institutions Code section 15630.1, subdivision (g) is fatal to a claim of negligence per se.[7]

█ Pointing to excerpts from the legislative history of section 15630.1, appellant contends that the Legislature imposed the reporting duty to protect elderly individuals such as her father. We do not disagree with this proposition. However, nothing in the legislative history before us suggests that subdivision (g) is ambiguous, or that it was enacted to achieve a purpose other than that conveyed by its plain language. Under these circumstances, we may not interpret subdivision (g) in a manner that will frustrate the Legislature's intent in enacting it. (See *WRI Opportunity Loans II, LLC v. Cooper, supra,* 154 Cal.App.4th at p. 538.)

Appellant also contends that public policy and morality support the imposition of tort liability on respondent, noting that respondent's failure to comply with the statutory reporting duty played a prominent causal role in her father's financial injuries. As our Supreme Court has explained, in interpreting a statute, our role as a court is limited: "We must take the

---

[7] *People v. Davis* (2005) 126 Cal.App.4th 1416 [25 Cal.Rptr.3d 92], upon which appellant also relies, is inapposite for similar reasons. There, the appellate court addressed the mental state required for a criminal conviction for failure to report suspected physical abuse of an elder under section 15630, which contains no provision akin to subdivision (g) of section 15630.1. (126 Cal.App.4th at pp. 1425–1440.)

language . . . as it was passed into law, and must, if possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions." (*People v. Garcia* (1999) 21 Cal.4th 1, 14 [87 Cal.Rptr.2d 114, 980 P.2d 829].) Because appellant's contention cannot be reconciled with this principle, we must reject it. In sum, appellant's allegations regarding respondent's failure to comply with the statutory reporting duty state no claim against respondent.

### D. *No Claim Under Other Law*

We turn to whether the remaining allegations in appellant's complaints establish a claim "under . . . any other law" (subd. (g)).[8] For the reasons explained below, we conclude that they state no claim for breach of fiduciary duty or negligence under the common law principles applicable to banks (see pt. D.1., *post*). Nor do they state a claim for elder abuse under section 15657.5 (see pt. D.2., *post*).

#### 1. *No Claim for Breach of Fiduciary Duty or Negligence*

We first inquire whether respondent was obliged to prevent Kaustubh's financial losses through his real estate transactions and participation in lottery scams. "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." (*Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)

Under the common law, banks ordinarily have limited duties to borrowers. Absent special circumstances, a loan does not establish a fiduciary relationship between a commercial bank and its debtor. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979–981 [21 Cal.Rptr.2d 834].) Moreover, for purposes of a negligence claim, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096 [283 Cal.Rptr. 53].) As explained in *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 334–335 [277 Cal.Rptr. 753], "[a] commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower. [Citation.] It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid.

---

[8] Our inquiry into this question does not encompass the 2008 amendments to the elder abuse statutes, as the amendments are inapplicable to appellant's claims (see pt. B., *ante*).

[Citations.] And in this state a commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights. [Citation.]"

 Similarly, the relationship between a bank and its depositor is not fiduciary in character. (*Chazen v. Centennial Bank* (1998) 61 Cal.App.4th 532, 537 [71 Cal.Rptr.2d 462].) " 'The relationship of bank and depositor is founded on contract,' [citation] which is ordinarily memorialized by a signature card that the depositor signs upon opening the account. [Citation.] This contractual relationship does not involve any implied duty 'to supervise account activity' [citation] or 'to inquire into the purpose for which the funds are being used' [citation] . . . ." (*Ibid.*)

However, despite the contractual basis of the bank-depositor relationship, a bank can be subject to tort liability to a depositor for misconduct in connection with an account. A bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. (*Chazen v. Centennial Bank, supra*, 61 Cal.App.4th at p. 537.) In addition, as elaborated below (see pt. D.2., *post*), a bank may be liable for aiding and abetting a tort when it renders " ' "substantial assistance" ' " to a tortfeasor during a business transaction, that is, knowingly aids the commission of the tort. (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144–1145 [26 Cal.Rptr.3d 401] (*Casey*).)

Under these principles, appellant's allegations regarding respondent's conduct in connection with the loan and fund transfers fail to state claims for breach of fiduciary duty or negligence. Her complaints allege no facts suggesting that respondent undertook a special fiduciary duty to Kaustubh through its agreements with him or in any other way.[9] Although the complaints allege—without any supporting facts or details—that respondent's loan was "suspicious," nothing in the complaints suggests that respondent acted outside "the scope of its conventional role as a mere lender of money," that respondent improperly persuaded Kaustubh to borrow the funds, or that the loan contained unfair or disadvantageous terms. (*Nymark v. Heart Fed. Savings & Loan Assn., supra*, 231 Cal.App.3d at p. 1096.) Moreover, nothing in the complaints suggests that in transferring funds at Kaustubh's request,

---

[9] A fiduciary duty undertaken by agreement arises when one person enters into a confidential relationship with another. (*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.* (2000) 83 Cal.App.4th 409, 416–417 [99 Cal.Rptr.2d 665], disapproved on another point in *Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1154 [17 Cal.Rptr.3d 289, 95 P.3d 513].) A confidential relationship is created when " ' "a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." ' " (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 382 [193 Cal.Rptr. 422].)

respondent discharged its contractual duties in an unreasonable manner or knew that Kaustubh was the victim of illegal scams.

*Murray v. Bank of America, N.A.* (Ct.App. 2003) 354 S.C. 337 [580 S.E.2d 194] (*Murray*) and *Patrick v. Union State Bank* (Ala. 1996) 681 So.2d 1364 (*Patrick*), upon which appellant relies, are distinguishable. In *Murray*, a thief stole the plaintiff's driver's license, opened a bank account in the plaintiff's name, and wrote $7,500 in fraudulent checks. (580 S.E.2d at p. 196.) After suing the bank for negligence, the plaintiff testified at trial that the bank maintained the account for a month after she brought the fraud to the bank's attention. (*Id.* at p. 198.) In affirming the judgment in the plaintiff's favor, the appellate court concluded that the bank's failure to act promptly upon notice of the fraud constituted negligence. (*Ibid.*) Here, unlike *Murray*, appellant's complaints do not allege that respondent knew of the fraud perpetrated on her father.

In *Patrick*, a thief stole the plaintiff's temporary driver's license. (*Patrick, supra*, 681 So.2d at p. 1365.) A bank permitted the thief to open an account in the plaintiff's name using her temporary license, even though the license displayed no picture and the thief gave no permanent address. (*Ibid.*) In opening the account, the bank made no effort to verify the Social Security number and personal information provided by the thief. (*Ibid.*) Although the thief wrote numerous bad checks, the bank sent no notices to the plaintiff at the address stated on her temporary driver's license. (*Id.* at pp. 1366–1367.) In holding that the plaintiff could state a negligence claim against the bank, the Alabama Supreme Court concluded that the bank, in opening the account, established a relationship with the plaintiff that obliged it to exercise reasonable care in connection with the account. (*Id.* at pp. 1368–1371.) Here, unlike the circumstances in *Patrick*, appellant maintains that respondent improperly failed to prevent Kaustubh—not an imposter—from withdrawing funds from his own account. As noted above, a bank is ordinarily not required to supervise a depositor's use of his own funds. (*Chazen v. Centennial Bank, supra*, 61 Cal.App.4th at p. 537.)

Appellant suggests that her allegations regarding her father's mental incapacity are sufficient to establish a claim for negligence or breach of fiduciary duty. Her complaints assert that Kaustubh's ability to manage his finances was substantially impaired, and that some of respondent's employees "wonder[ed] about . . . [his] mental state" when they carried out his instructions. Additionally, the first amended complaint specifically alleges that Kaustubh was of unsound mind within the meaning of Civil Code section 39, which states in pertinent part: "(a) A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission [pursuant to Civil Code section 1688 et seq.] [¶] (b) A rebuttable

presumption affecting the burden of proof that a person is of unsound mind shall exist for purposes of this section if the person is substantially unable to manage his or her own financial resources or resist fraud or undue influence."

In our view, these allegations do not establish tortious misconduct by respondent because they fail to state even an adequate basis for rescission of a contract or transaction under common law principles. The fact that a person suffers from a measure of mental incapacity does not, by itself, extinguish the person's ability to participate in contractual relationships and transactions. (*Burns v. Campbell* (1941) 17 Cal.2d 768, 773–775 [112 P.2d 237] [evidence of weakness of mind alone does not establish basis for rescission]; *Holman v. Stockton Sav. & Loan Bk.* (1942) 49 Cal.App.2d 500, 508 [122 P.2d 120] ["The law in this state is clear that senile dementia does not render one incapable of executing contracts or transacting business."].)[10] Civil Code section 1689, subdivision (b)(1), permits rescission of a contract when "the consent of the party rescinding" was "obtained through . . . undue influence, exercised by or with the connivance of the party as to whom he rescinds." Civil Code section 1575 further provides that "[u]ndue influence consists: [¶] . . . [¶] . . . [i]n taking an unfair advantage of another's weakness of mind."

In view of these principles, "undue influence involves the use of excessive pressure to persuade one vulnerable to such pressure . . . ." (*Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 131 [54 Cal.Rptr. 533]; see *Olam v. Congress Mortgage Co.* (N.D.Cal. 1999) 68 F.Supp.2d 1110, 1139–1142.) Accordingly, to state a claim for rescission, the plaintiff must ordinarily allege that the party against whom rescission is sought took some advantage of the mental weakness or incapacity of the other party. (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 547, 551, pp. 674–675, 679–680.) Here, appellant's complaints do not allege that respondent improperly pressured her father to secure a loan or transfer his funds. In sum, appellant's allegations establish no claim against respondent on a legal basis outside the elder abuse statutes.

### 2. *No Elder Abuse Claim*

Appellant contends that her allegations state a claim for financial abuse of an elder under section 15657.5. We disagree. The courts are divided over whether this section and related provisions create independent causes of actions or merely enhance the remedies available under preexisting causes of action. (See *Perlin v. Fountain View Management, Inc.* (2008) 163

---

[10] To protect such an individual, California law provides for the establishment of a conservatorship. (Prob. Code, § 1400 et seq.)

Cal.App.4th 657, 664–666 [77 Cal.Rptr.3d 743] [discussing division of authority concerning § 15657, which addresses physical abuse of an elder]; Balisok, Elder Abuse Litigation, *supra*, ¶ 8:9, p. 8-5 (rev. # 1, 2009) ["Whether 'financial abuse' amounts to a new cause of action or whether it is remedial is an important question."].) We need not resolve this issue as, assuming arguendo that section 15657.5 creates an independent cause of action, appellant's allegations do not state a claim against respondent for financial abuse of an elder.

■ To begin, the allegations fail to establish that respondent directly engaged in financial abuse. As effective during the pertinent events, subdivision (a)(1) of former section 15610.30 provided that financial abuse occurs when an entity "[t]akes, secretes, appropriates, or retains real or personal property of an elder . . . to [*sic*] a *wrongful use or with intent to defraud,* or both." (Italics added.) Subdivision (b) of former section 15610.30 further provided that "bad faith" was sufficient to satisfy the italicized condition. Nothing in appellant's complaints suggests that respondent, in issuing a loan to Kaustubh and transferring his funds at his request, obtained his property for an improper use, or acted in bad faith or with a fraudulent intent.

■ Furthermore, we conclude that the allegations fail to establish that respondent assisted in financial abuse by third parties. As effective during the pertinent events, subdivision (a)(2) of former section 15610.30 provided that financial abuse occurs when an entity "[a]ssists in taking, secreting, appropriating, or retaining real or personal property of an elder . . . to [*sic*] a wrongful use or with intent to defraud, or both." As the elder abuse statutes do not define the term "assists," and no court has addressed the meaning of the term, we confront a question of statutory interpretation.

In our view, the provision cannot be understood to impose strict liability for assistance in an act of financial abuse. Generally, "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. ' "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." [Citations.]' " (*Casey, supra,* 127 Cal.App.4th at p. 1144, quoting *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325–1326 [58 Cal.Rptr.2d 308].) The adoption of this rule predates the elder abuse statutes. (See *Coffman v. Kennedy* (1977) 74 Cal.App.3d 28, 31–32 [141 Cal.Rptr. 267].)

■ As the Legislature is presumed to be aware of existing judicial decisions when it enacts or amends statutes, the term "[a]ssists," as found in

former section 15610.30, subdivision (a)(2), is properly interpreted in light of the rule. (*Bradley v. Breen* (1999) 73 Cal.App.4th 798, 804 [86 Cal.Rptr.2d 726].) Under that rule, a bank may be liable as an aider and abettor of a tort if the bank, in providing ordinary services, "actually knew those transactions were assisting the customer in committing a specific tort." (*Casey, supra,* 127 Cal.App.4th at p. 1145.) We thus conclude that when, as here, a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have "assisted" the financial abuse only if it knew of the third party's wrongful conduct.[11]

Because appellant has not alleged that respondent knew about the schemes that victimized her father, she has failed to allege that respondent assisted in financial abuse under section 15610.30. As explained in *Casey,* "on demurrer, a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted." (*Casey, supra,* 127 Cal.App.4th at p. 1152.) In sum, the demurrers to her complaints were properly sustained.

### E. *Leave to Amend*

The remaining question is whether the demurrers were properly sustained without leave to amend. Because appellant has effectively received one opportunity to amend her complaint and she has not suggested on appeal how she would amend if given the opportunity, we discern no abuse of discretion. As explained in *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 [96 Cal.Rptr.2d 354], "[t]he burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]"

---

[11] We find additional support for this conclusion in *Wood v. Jamison* (2008) 167 Cal.App.4th 156 [83 Cal.Rptr.3d 877]. There, an attorney represented an elderly client and a third party posing as the elderly client's nephew in a series of transactions that enriched the third party at the expense of the elderly client. (*Id.* at pp. 158–159.) Following a trial, a judgment was entered against the attorney that included a fee award under section 15657.5. (167 Cal.App.4th at pp. 164–165.) On appeal, the attorney contended that the fee award was improper because there was no evidence that he had "knowingly assisted" the third party's financial abuse. (*Ibid.*) In affirming the judgment, the appellate court concluded there was sufficient evidence that the attorney knew that the third party was taking the elder's funds for an improper purpose. (*Ibid.*)

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied July 19, 2010, and appellant's petition for review by the Supreme Court was denied October 13, 2010, S185636. Chin, J., did not participate therein.