Filed 2/16/23  Fleming v. JPMorgan Chase Bank CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FLORENCE FLEMING, | B316665 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV26552) |
| v. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Armen Tamzarian, Judge.  Affirmed.

Law Office of Norman Rasmussen, Norman Rasmussen and Mark B. Simpkins; Friedhofer and James F. Friedhofer, for Plaintiff and Appellant.

Akerman, Parisa Jassim, Jacqueline Foroutan, and Preston K. Ascherin for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff Florence Fleming appeals from a judgment of dismissal following an order sustaining a demurrer without leave to amend. We affirm.

# II. BACKGROUND

A. *Factual Background*[1]

Plaintiff was married to Brian Fleming for approximately 40 years. During the marriage, Brian managed the marital estate's finances and plaintiff trusted and relied on him for advice.

On April 20, 1990, plaintiff and Brian purchased a residential condominium located on Wilshire Boulevard in Los Angeles (the Property). The Property was purchased with community property assets and a "small" purchase money loan. Plaintiff believed the only loan on the Property that she was obligated to pay was the purchase money loan.

Brian engaged in numerous extramarital affairs during the marriage. In 2003, he devised a plan to use, without plaintiff's knowledge, community property assets to support one of his affair partners.

---

[1]     "In this appeal following the sustaining of a demurrer, we assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken." (*Fierro v. Landry's Restaurant, Inc.* (2019) 32 Cal.App.5th 276, 281.)

On or about November 10, 2005, Brian recorded a fraudulent deed that contained plaintiff's forged (or unknowingly placed) signature. The fraudulent deed purported to transfer plaintiff and Brian's community interest in the Property to Brian as his sole and separate property.

On November 9 and 10, 2005, Brian obtained a $825,000 loan and a $165,000 loan from Washington Mutual Bank (Washington Mutual). The loans were secured by two deeds of trust against the Property. Plaintiff did not know of or consent to the loans. The deeds of trust were recorded on November 17, 2005.

On November 18, 2005, Brian recorded a quitclaim deed purporting to transfer title in the Property from himself to him and plaintiff as community property. Brian then had the deed and deeds of trust mailed to his work address instead of to the Property.

On April 2, 2007, plaintiff filed a petition for divorce.

On September 25, 2008, defendant JPMorgan Chase Bank, N.A. (Chase) acquired the Washington Mutual loans.

In 2010, Brian obtained a modification of the loans from Chase. As alleged by plaintiff, "because title [to the Property] was held as community property in 2010 when Chase . . . modified the fraudulent loans, Chase . . . had notice of [p]laintiff's interest in the Property and it could not properly modify the loans without giving [p]laintiff notice, and obtaining her consent, which Chase . . . never did."

On June 13, 2011, plaintiff signed the Marital Settlement Agreement (Agreement). The Agreement listed the Property as "community property" that would be divided in the following manner: "Title to [the Property] is currently held jointly by the

Parties.  The parties shall hold title as Joint Tenants.  It is the primary residence of Brian and he shall have the exclusive use and occupancy of it for his lifetime as long as he uses it as his primary residence.  Brian shall pay all expenses related to it on a timely basis.  If the [P]roperty is sold, the parties will equally divide the net proceeds from the sale (sale price, less remaining secured debt that is now in existence, less expenses).  On August 17, 2010, Brian entered into a mortgage modification with Chase Bank . . . that extended the mortgage maturity 10 years to 2045 . . . .  This modified mortgage has a principal balance of $869,034 at [*sic*] August 31, 2010.  . . .  [¶]  Other than is otherwise specifically set forth herein, Brian will pay all mortgage, taxes, utilities, maintenance and other expenses related to the [Property] without the right to reimbursement."

The Agreement disclosed that two notes were secured by the Property:  "Chase Bank account No. 3591 (first) and Chase Bank account No. 5797 (second)."

The Agreement also stated that each undersigned party "has read, considered, and understands each provision of this Agreement."

On August 8, 2011, plaintiff and Brian finalized their divorce.

On December 31, 2015, the deeds of trust were assigned to Chase.

Plaintiff did not discover the fraud until after Brian's death in 2019.

4

B.	*Procedural History*

On July 14, 2020, plaintiff filed her complaint, alleging causes of action for quiet title and injunctive and declaratory relief against Chase.[2]  On December 30, 2020, Chase demurred and requested judicial notice of eight documents recorded by the Los Angeles County Recorder's Office.  On February 11, 2021, the trial court granted the requests for judicial notice and sustained the demurrer with leave to amend.

On February 23, 2021, plaintiff filed her first amended complaint.  On April 19, 2021, Chase demurred.  The trial court sustained the demurrer for failure to exhaust administrative remedies pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA, 12 U.S.C. § 1811 et seq.).

On May 25, 2021, plaintiff filed her second amended complaint, again alleging quiet title, injunctive relief, and declaratory relief against Chase.  Plaintiff alleged among other things that Washington Mutual and Chase participated in Brian's fraud.  Specifically, plaintiff alleged that Brian could not have succeeded in the fraud "without the assistance, negligence, breaches of duty, and/or participation of . . . employees of Washington Mutual . . . .  [T]he entire structure of the [2005] loans . . . raises a red flag and any prudent lender would have at least contacted Plaintiff to confirm that she intended to make a gift of her community property interest in the Property."  Plaintiff further alleged that Chase "affirmed and ratified the

---

[2]	Plaintiff also alleged other claims against other defendants, which are not at issue on appeal.

5

[earlier] fraud in 2010 when it modified the fraudulent loans and deeds of trust."

On July 28, 2021, Chase demurred, arguing that the second amended complaint was barred by the statute of limitations and FIRREA. In support, Chase cited the recorded documents that the trial court had judicially noticed. On September 28, 2021, the court again took judicial notice of certain recorded documents[3], and sustained the demurrer without leave to amend on statute of limitations grounds, finding that plaintiff was required to file her lawsuit by June 13, 2014. Judgment was entered on September 28, 2021. Plaintiff timely appealed.

## III.  DISCUSSION

A.  *Judicial Notice*

Plaintiff challenges the trial court's granting of judicial notice of certain recorded documents. We review judicial notice rulings for abuse of discretion. (*Physicians Committee for Responsible Medicine v. Los Angeles Unified School Dist.* (2019) 43 Cal.App.5th 175, 182.)

Plaintiff does not dispute that the recorded documents were appropriate subjects of judicial notice. Instead, she contends that the trial court erred in relying on the "content of the documents, including the legal effect of the documents . . . ." We disagree.

---

[3]  The court granted judicial notice as to Exhibits 3, 4, and 8, which were the two 2005 deeds of trust and the assignment of the second deed of trust to Chase on December 15, 2015. It is unclear why the court did not judicially notice any other recorded documents as it had done previously.

The court stated that it took judicial notice "of the existence, facial contents, and legal effects" of defendant's exhibits.  There is no prohibition against the court taking such judicial notice.  (Evid. Code, § 452, subd. (h); *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924, fn. 1; *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754.)

Plaintiff complains that the trial court's statement, "[b]oth deeds of trust identify the 'borrower' as Brian Fleming, a married man as his sole and separate property," demonstrates that "the trial court did, in fact, rely upon the content of the disputed deeds of trust in making its ruling . . . ."  To the extent plaintiff suggests the court improperly relied on the truth of the matter asserted in the deeds of trust, we disagree.  The court did not assume that Brian *was* the sole owner of the Property, an issue that was not before the court or before us.  Accordingly, we find no error.

B.    *Demurrer*

1.    Standard of Review

We next consider plaintiff's challenge to the trial court's sustaining of Chase's demurrer.  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 . . . .)  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in

their context.  (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 . . . .)  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  (See *Hill v. Miller* (1966) 64 Cal.2d 757, 759 . . . .)  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781 . . . ; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 . . . .)  The burden of proving such reasonable possibility is squarely on the plaintiff.  (*Cooper v. Leslie Salt Co., supra*, [70 Cal.2d] at p. 636.)" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### 2. FIRREA

First, we consider whether plaintiff's claims are barred by her failure to exhaust administrative remedies under FIRREA. Title 12 United States Code section 1821(d)(13)(D) provides: "Except as otherwise provided in this subsection, no court shall have jurisdiction over—  [¶]  (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [Federal Deposit Insurance Corporation (FDIC)] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or  [¶]  (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver." 'Thus, '[f]ailure to comply with the claims procedure bars any lawsuit against a failed depository institution.'" (*Saffer v. JP Morgan Chase Bank, N.A.* (2014) 225 Cal.App.4th 1239, 1247.)

"'Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a "claim" within the meaning of FIRREA's administrative claims process.'" (*Benson v. JPMorgan Chase Bank, N.A.* (9th Cir. 2012) 673 F.3d 1207, 1214 (*Benson*).) Accordingly, "FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution." (*Ibid.*, fn. omitted.) Here, plaintiff's allegation that Chase "affirmed and ratified the [earlier] fraud" is, at bottom, a claim based on Washington Mutual's 2005 conduct and therefore is barred by FIRREA for failure to exhaust administrative remedies.

By contrast, "a claim alleging liability based only on post-purchase misconduct of a purchasing bank would not 'relate to' acts or omissions of a failed bank for purposes of FIRREA." (*Benson, supra*, 673 F.3d at p. 1216.) In other words, "[an] adequately pled claim based on [Chase's] own misconduct cannot fail merely because it is coupled with a barred claim against [Washington Mutual]." (*Ibid.*) Here, plaintiff alleged that Chase failed to obtain plaintiff's consent when it entered into a loan modification with Brian in 2010, even though it had notice that the Property was held, in part, by her as community property. Thus, plaintiff's claims based on Chase's alleged misconduct in 2010 are not jurisdictionally barred by FIRREA.

### 3. Statute of Limitations

Having found that plaintiff's causes of action survive FIRREA's jurisdictional bar only with respect to Chase's alleged 2010 misconduct, we next consider whether the statute of

9

limitations bars those remaining causes of action.  The parties agree that the applicable statute of limitations is three years.  (See Code Civ. Proc., § 338, subd. (d) [action for relief on ground of fraud or mistake has three-year limitation period; "The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake"].)

"The California rule on delayed discovery of a cause of action is the statute of limitation begins to run 'when the plaintiff has reason to suspect an injury and some wrongful cause . . . .' (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 803 . . . .)  'A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery . . . .  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.'  (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 . . . .)"  (*MGA Entertainment, Inc. v. Mattel, Inc.* (2019) 41 Cal.App.5th 554, 561.)

"The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.  . . .  In many cases it has been said that means of knowledge are equivalent to knowledge.  [Citations.]  This is true, however, only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious."  (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437–438; accord, *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 298 & fn. 15.)

We agree with the trial court that the statute of limitations began to run on June 13, 2011, when plaintiff signed the

Agreement.  That Agreement disclosed the Property was encumbered by a mortgage that originated from Chase's loan modification with Brian in 2010.  As noted, plaintiff alleged that Chase was on notice that the Property was held as community property and thus it was required to obtain plaintiff's consent before modifying the loan.  (See Fam. Code, § 1102, subd. (a) ["both spouses, either personally or by a duly authorized agent, are required to join in executing an instrument by which that community real property or an interest therein is . . . encumbered"].)  But plaintiff also was aware that in 2010, the Property was held as community property and that she had not signed a loan modification.  And, the Agreement disclosed that "[o]n August 17, 2010, Brian entered into a mortgage modification with [Chase] . . . [which] ha[d] a principal balance of $869,034 . . . ."

According to plaintiff, the statements in the Agreement did not trigger a duty of inquiry because she was entitled to rely upon Brian's representations to her as a fiduciary.  (See Fam. Code, § 721, subd. (b) [with limited exceptions, "in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other.  This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other"].)  In plaintiff's view, her fiduciary relationship with Brian postponed the accrual of the action until the date of Brian's death.  We disagree.

"'Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act

11

constituting a breach of fidelity.  [Citations.]  The existence of a trust relationship limits the duty of inquiry. "Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary.""" (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157 (*WA Southwest 2, LLC*).) Even assuming that plaintiff's fiduciary relationship with Brian could postpone the accrual of her claims against Chase,[4] it does not bar the application of the statute of limitations here.

On June 13, 2011, plaintiff had actual knowledge that Brian alone had entered into a loan modification with Chase that encumbered the Property and that the principal balance of the mortgage was over $860,000.  This conduct serves as the basis of plaintiff's remaining claims against Chase.  (See also *WA Southwest 2, LLC*, *supra*, 240 Cal.App.4th at p. 157 ["even assuming for the sake of argument that each of the respondents had a fiduciary duty to plaintiffs, this does not mean that plaintiffs had no duty of inquiry if they were put on notice of a breach of such duty"].)  Accordingly, the statute of limitations required plaintiff to file her complaint for quiet title and injunctive and declaratory relief against Chase by June 13, 2014,

---

[4]    Chase is not in a fiduciary relationship with plaintiff nor was it in a fiduciary relationship with Brian.  (See *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 740 ["Under the common law, banks ordinarily have limited duties to borrowers.  Absent special circumstances, a loan does not establish a fiduciary relationship between a commercial bank and its debtor"].)

which she did not do.  The trial court did not err by sustaining Chase's demurrer without leave to amend.[5]

## IV.  DISPOSITION

The judgment of dismissal is affirmed.  Defendant JPMorgan Chase Bank, N.A., is entitled to recover costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

I concur:

MOOR, J.

---

[5]     Plaintiff makes no argument that she can amend her pleadings to cure the deficiencies in her second amended complaint.

13

Florence Fleming v. JPMorgan Chase Bank, N.A.
B316665


BAKER, Acting P. J., Concurring



I do not join the majority's statute of limitations discussion. I agree, however, that the trial court's ruling should be affirmed. The operative complaint clearly alleges that defendant JPMorgan Chase "had notice of the underlying fraud in the initial [Washington Mutual] loans at the time that it modified those loans and deeds of trust" and "[i]n so doing . . . ratified and adopted the prior fraud as its own." The Financial Institutions Reform, Recovery and Enforcement Act exhaustion bar therefore fully applies. The majority concludes otherwise by reading the operative complaint to include a claim that is not properly pled.


BAKER, Acting P. J.