[No. B210799. Second Dist., Div. Five. Nov. 19, 2009.]

WILLIAM KEITH JOHNSON, Plaintiff and Appellant, v.
HONEYWELL INTERNATIONAL INC. et al., Defendants and
Respondents.

**COUNSEL**

Metzger Law Group, Raphael Metzger and Gregory A. Coolidge for Plaintiff and Appellant.

Horvitz & Levy, David M. Axelrad, Mary-Christine Sungaila, Dean A. Bochner; Atkins & Evans, Irwin S. Evans and Cynthia L. Sands for Defendant and Respondent E. I. DuPont de Nemours and Company.

Horvitz & Levy, David M. Axelrad, Mary-Christine Sungaila, Dean A. Bochner; Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor and Kevin C. Mayer for Defendant and Respondent Honeywell International Inc.

Horvitz & Levy, David M. Axelrad, Mary-Christine Sungaila, Dean A. Bochner; Prindle, Decker & Amaro and James G. Murray for Defendant and Respondent W.W. Grainger, Inc.

## OPINION

**ARMSTRONG, J.**—"A manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger." (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 71 [74 Cal.Rptr.3d 108, 179 P.3d 905] (hereinafter, *American Standard*).) This is the sophisticated user defense, and it applies to negligence and strict liability warning defect claims. (*Id.* at p. 65.)

In this case, which comes to us after a demurrer was sustained without leave to amend, we are asked to determine whether the defense also applies to a cause of action for negligence for failure to warn on a theory of negligence per se, or to a cause of action for strict liability/design defect under the risk-benefit analysis.[1] We find that the defense does apply to the negligence cause of action, but does not apply to the strict liability cause of action.

We thus reverse the judgment in favor of respondents Honeywell International Inc., E. I. DuPont de Nemours and Company, and W.W. Grainger, Inc., on appellant William Keith Johnson's complaint against them.

## BACKGROUND

Johnson is an EPA (Environmental Protection Agency)-certified HVAC (heating, ventilation, and air conditioning) technician who worked on commercial air conditioning systems. Repair of such systems may involve brazing pipes, and as the Supreme Court explained in *American Standard, supra*, 43

---

[1] A cause of action for strict liability may allege warning defects, manufacturing defects (alleging that the item was produced in a substandard condition) and/or design defects (alleging that the product was built according to design, but that the design itself is defective). (*Sparks v. Owens-Illinois, Inc.* (1995) 32 Cal.App.4th 461, 472 [38 Cal.Rptr.2d 739]; *McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111, 1120 [123 Cal.Rptr.2d 303].) Design defect may be proved under the consumer expectation test (that the product failed to perform as safely as an ordinary consumer would expect) and/or the risk-benefit test. Under the risk-benefit test, products that meet consumer expectations may be defective if the design embodies an " 'excessive preventable danger.' " (*Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 430 [143 Cal.Rptr. 225, 573 P.2d 443].)

Cal.4th 56 those systems "commonly use R-22, a hydrochlorofluorocarbon refrigerant. The refrigerant can decompose into phosgene gas when exposed to flame or high heat, as could happen while a technician is brazing air conditioner pipes containing residual refrigerant. Exposure to phosgene gas may cause numerous health problems . . . ." (*Id.* at p. 61.)

Johnson sued American Standard, a manufacturer of air conditioning equipment, and respondents,[2] who are manufacturers of R-22 refrigerant, alleging that he was injured by the phosgene gas that was created from R-22 refrigerant when he brazed air conditioner pipes, during the normal course of repair.

The case initially proceeded as to American Standard. Against that defendant, Johnson brought causes of action for common law negligence, strict liability for failure to warn, and strict liability for design defect, on the consumer expectations test. On each cause of action, Johnson's theory was that American Standard knew that harmful phosgene gas would be created when the equipment was serviced, but failed to provide an adequate warning.

American Standard moved for summary judgment on the ground, inter alia, that it had no duty to warn because the risk was within the professional knowledge of HVAC installers and repairers—the sophisticated user defense. Although that defense had never been squarely adopted in California, the trial court found that the defense applied, as did we.

The Supreme Court affirmed, adopting the sophisticated user defense for California law. (*American Standard, supra,* 43 Cal.4th at p. 65.) The Court explained that "Under the sophisticated user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware. (See 4 Shearman & Redfield, Negligence (rev. ed. 1941) Manufacturers and Vendors, § 656, p. 1576.) Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause. (Owen, Products Liability Law (2005) § 9.5, p. 599.) The rationale supporting the defense is that 'the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers.' (*Ibid.*) This is because the user's knowledge of the dangers is the equivalent of prior notice. [Citation.]" (*American Standard, supra,* 43 Cal.4th at p. 65.)

---

[2] There were other defendants, but they are apparently no longer in the case.

Noting that "there is little functional difference between the two theories . . . ," the Supreme Court held that the defense is applicable to warning defect claims in both negligence and strict liability causes of action. (*American Standard, supra*, 43 Cal.4th at p. 71.)

The Supreme Court also found that the undisputed evidence at summary judgment was that manufacturers and HVAC technicians had known of the dangers of phosgene exposure as early as 1931, and that "the danger created by exposing refrigerant to high heat and flame was well known within the community of HVAC technicians to which plaintiff belonged." (*American Standard, supra*, 43 Cal.4th at p. 74.) Thus, Johnson, a sophisticated user, should have known of the risk and the sophisticated user defense defeated all causes of action against American Standard.

On remand, the case proceeded as to respondents. Initially, the causes of action against them were the same as the causes of action against American Standard, but Johnson filed an amended complaint, bringing instead causes of action for negligence on a negligence per se theory, and for strict liability on a design defect risk-benefit theory. Respondents successfully demurred to the complaint, again largely based on the sophisticated user defense. The trial court found that the defense barred both causes of action, and entered judgment for respondents.

## DISCUSSION

### 1. *Negligence Per Se*

Evidence Code section 669 creates a presumption of negligence where a defendant "(1) . . . violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

"[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1353, fn. 2 [68 Cal.Rptr.3d 177].)

The doctrine of negligence per se does not provide a private right of action for violation of a statute. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285 [45 Cal.Rptr.3d 222].) Notably, the statutes in question here do not include such a right.

■ Johnson's allegation was that respondents had violated Labor Code sections 6390 and 6390.5 and the attendant regulations.[3] Those statutes provide that manufacturers of hazardous substances such as R-22 refrigerant must prepare, and provide direct purchasers with, material safety data sheets (MSDS) which contain specified information about risks, hazards, and safety precautions. (Lab. Code, § 6391.)

The purpose of an MSDS "is to inform those who may come into contact with potentially hazardous chemicals about their dangers. (See Cal. Code Regs., tit. 8, § 5194, subd. (g).) Employers are required to use the MSDS's to train and educate their employees about the chemicals and dangers to which they may be exposed on the job. (See Cal. Code Regs., tit. 8, § 5194, subd. (h).) Among other things, employers are required to tell employees where they can find the MSDS's, how to read them, how to detect the presence of dangerous materials, and how to protect against possible health hazards from those materials. (Cal. Code Regs., tit. 8, § 5194, subd. (h)(2)(C), (D), (E), (F).)" (*American Standard, supra*, 43 Cal.4th at p. 62, fn. omitted.)

■ Johnson's complaint alleged that respondents' MSDS's were deficient because they failed to provide all the requisite information about hazards and safety precautions. This is a theory of negligence for failure to warn, and we find that the sophisticated user defense applies.

■ Under the sophisticated user defense, a manufacturer is not liable to a sophisticated user of its product for failure to warn, if the sophisticated user knew or should have known of the risk, whether the cause of action is for negligence or for strict liability for failure to warn. (*American Standard, supra*, 43 Cal.4th at p. 71.) It follows that a manufacturer is not liable to a sophisticated user for failure to warn, even if the failure to warn is a failure to provide a warning required by statute.

Johnson's argument to the contrary is that the sophisticated user defense cannot apply to this claim as a matter of law, because its application would

---

[3] Johnson makes extensive arguments about the statutory and regulatory requirements, and the purposes of those requirements. Relevant to these arguments, he has asked us to take judicial notice of various federal regulations and interpretations of those regulations. We deny the request. The material is not helpful to our analysis of the issues as we see them.

absolve manufacturers of their statutory duties. He points out that neither the statute nor the regulations exempt manufacturers from preparing MSDS's if the expected users are sophisticated users. He contends that application of the sophisticated user doctrine would usurp the power of the Legislature, and argues that a common law defense such as the sophisticated user defense can only apply to a common law cause of action, and not to a negligence cause of action under a negligence per se theory. In legal support, Johnson relies on *Elsner v. Uveges* (2004) 34 Cal.4th 915 [22 Cal.Rptr.3d 530, 102 P.3d 915] and *Capri v. L.A. Fitness International, LLC* (2006) 136 Cal.App.4th 1078 [39 Cal.Rptr.3d 425].

In *Capri*, the plaintiff fell on a swimming pool deck at his health club. His negligence per se contention was that the club had violated various provisions of the Health and Safety Code, part of a detailed regulatory scheme concerning safety at public swimming pools. The holding of the case was that a release and waiver of liability in the membership agreement fell under the prohibition of Civil Code section 1668, which provides that " 'All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for . . . or *violation of law, whether willful or negligent*, are against the policy of the law.' " (*Capri v. L.A. Fitness International, LLC, supra*, 136 Cal.App.4th at pp. 1082–1083.)

In *Elsner*, the Supreme Court construed amendments to Labor Code section 6304.5, which at one time barred the admission of Cal-OSHA (California Occupational Safety and Health Act of 1973; Lab. Code, § 6300 et seq.) provisions in employee negligence cases against nonemployers. The Court concluded that "Cal-OSHA provisions are to be treated like any other statute or regulation and may be admitted to establish a standard or duty of care in all negligence and wrongful death actions, including third party actions." (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 928.)

Johnson reads these cases to mean that a common law defense such as the sophisticated user defense cannot be used to abrogate a statute or to absolve a manufacturer of its statutory duties. Neither case includes any such sweeping holding. More to the point, application of the sophisticated user defense here would not abrogate the statutes, absolve manufacturers of their statutory duties, or create exemptions to the MSDS requirements not placed into the law by the Legislature. Application of the defense will mean that some plaintiffs cannot recover in tort if the law is broken. It will not give anyone permission to break the law.

■ Under the doctrine of negligence per se, the plaintiff "borrows" statutes to prove duty of care and standard of care. (*Elsner v. Uveges, supra,* 34 Cal.4th at p. 927.) The plaintiff still has the burden of proving causation. Johnson could not do so here. ■ Sophisticated users are charged with knowing the dangers, so that "the failure to warn about those dangers is not the legal cause of any harm that product may cause." (*American Standard, supra,* 43 Cal.4th at p. 65.)

### 2. Strict Liability—Design Defect

■ "The concept of strict liability imposes legal responsibility for injury upon the manufacturer of a product without proof of negligence . . . ." (*Artiglio v. Superior Court* (1994) 22 Cal.App.4th 1388, 1392 [27 Cal.Rptr.2d 589].) "This doctrine of strict liability extends to products which have design defects, manufacturing defects, or 'warning defects.' " (*Sparks v. Owens-Illinois, Inc., supra,* 32 Cal.App.4th at p. 472.) ■ There are two species of design defects. "[A] product may be found defective in design if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (*Barker v. Lull Engineering Co., supra,* 20 Cal.3d at p. 429.) In the alternative, "a product may be found defective in design, even if it satisfies ordinary consumer expectations, if through hindsight the jury determines that the product's design embodies 'excessive preventable danger,' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design." (*Id.* at p. 430.)

Johnson's cause of action was based on this risk-benefit test.[4] He alleged that respondents' R-22 refrigerant was defective and the risks inherent in the design outweighed the benefits. He alleged that, as respondents knew, feasible and safer alternative designs/refrigerants existed at the time he was exposed to hazardous byproducts of R-22 refrigerant.

Respondents demurred in part based on the sophisticated user defense and the trial court sustained the demurrer on that ground. We agree with Johnson that the sophisticated user defense did not bar this cause of action. Significantly, respondents do not urge us to find that the defense applies, but instead

---

[4] He agrees that the sophisticated user defense will apply to a cause of action for strict liability design defect on the consumer expectations theory. That theory concerns the expectations of the "ordinary consumer" (*Barker v. Lull Engineering Co., supra,* 20 Cal.3d at p. 430) and under *American Standard,* he may not claim to be such a consumer.

advance two arguments not raised in the trial court. They ask us to engage in the risk-benefit analysis, and make an argument under comment k to Restatement Second of Torts, section 402A.[5]

### a. *Sophisticated user*

■ The sophisticated user defense concerns warnings. Sophisticated users "are charged with knowing the particular product's dangers." (*American Standard, supra*, 43 Cal.4th at p. 65.) "The rationale supporting the defense is that 'the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers.' [Citation.]" (*Ibid.*)

Johnson's design defect cause of action was not concerned with warnings. Instead, he alleged that respondents' design of their refrigerant was defective. We see no logical reason why a defense that is based on the need for warning should apply.

### b. *The risk-benefit analysis and the request for judicial notice*

Respondents ask us to resolve the risk-benefit question, arguing that the record "conclusively demonstrates" that the benefits of their design outweigh the risks. The "record" they refer to is the record which would exist if we were to grant respondents' request that we take judicial notice of various items.

First, we deny respondents' request that we take judicial notice of a declaration (of a chemist, Stephen Kujak) which was submitted by American Standard with its motion for summary judgment and of facts contained in the declaration, and of a Pew Research Center study entitled Luxury or Necessity? Things We Can't Live Without: The List Has Grown in the Past Decade, and of facts contained in the study.[6]

This is not summary judgment or trial; it is demurrer. Our task is to treat the well-pleaded allegations of the complaint as true and determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "The

---

[5] This second argument is advanced by respondents Honeywell and Grainger, but not DuPont.

[6] In their brief, respondents also refer to statements made by chemists Thomas Leck and Rajiv Singh in declarations submitted in support of the motions for summary judgment which respondents made before Johnson amended his complaint. We deem these arguments requests for judicial notice of the declarations, and deny those requests.

hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of affidavits, declarations, depositions, and other such material which was filed on behalf of the adverse party and which purports to contradict the allegations and contentions of the plaintiff." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 605 [176 Cal.Rptr. 824]; see *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374–375 [228 Cal.Rptr. 878].)

■ Respondents also ask us to take judicial notice of Johnson's separate statement of disputed, undisputed, and additional undisputed facts in opposition to American Standard's summary judgment motion, and of Johnson's memorandum in opposition to American Standard's motion for summary judgment, contending that the pleadings contain judicial admissions, and apparently also contending that the admissions satisfy their burden on this cause of action. To prove a defect under the risk-benefit test, "a plaintiff need only demonstrate that the design proximately caused the injuries. Once proximate cause is demonstrated, the burden shifts to the defendant to establish that the benefits of the challenged design, when balanced against such factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm." (*McCabe v. American Honda Motor Co., supra,* 100 Cal.App.4th at p. 1121.)

Johnson does not object to the request for judicial notice, but does argue that the pleadings contain no judicial admissions determinative of any issue on appeal. With that, we agree.

■ Design defect is determined by an examination of such factors as "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." (*Barker v. Lull Engineering Co., supra,* 20 Cal.3d at p. 431.)

Relevant to the "likelihood that such danger would occur," respondents ask us to notice the undisputed facts on American Standard's summary judgment motion that EPA regulations require technicians to evacuate refrigerant from air conditioning systems when servicing those systems, that evacuation reduces the risk of production of toxic decomposition gases when brazing, and that at the relevant times it was scientifically known that the health hazards of phosgene gas can be prevented with a breathing apparatus; and Johnson's statement that if he had known that brazing could produce phosgene gas, he would have insisted on a proper breathing apparatus or walked off the job.

Relevant to the "feasibility of a safer alternative design" factor, respondents ask us to notice the undisputed facts that "all types of refrigerant can theoretically produce hazardous byproducts when exposed to heat," and that "the risk of exposure to toxic decomposition products cannot be eliminated by designing equipment to use non-HCFC refrigerants," and the statement, in Johnson's memorandum of points and authorities, that "Plaintiff agrees with Defendant that the Trane evaporator could not have been designed in a way to avoid the use of refrigerants, to avoid contamination of the evaporator's refrigerant lines with residual amounts of refrigerant even after properly evacuating the lines, or to avoid the formation of phosgene during the intended and foreseeable brazing/repair of the evaporator's refrigerant lines."

Respondents argue that these are judicial admissions, and that they conclusively determine that the likelihood of danger is low and that there is no feasible safer design.[7]

█ We cannot see that the ruling on demurrer can be affirmed based on any of these statements. The issue of defect under the risk-benefit theory is complex, and dependent on numerous factors. "[T]he term defect as utilized in the strict liability context is neither self-defining nor susceptible [of] a single definition applicable in all contexts." (*Barker v. Lull Engineering Co., supra,* 20 Cal.3d at p. 427.) Johnson's statements, which concern the evaporator, not the refrigerant, cannot be said to resolve this complex issue, at this early stage of the case.

### c. *Comment k to the Restatement Second of Torts, section 402A*

This comment concerns unavoidably unsafe products. It states that, "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to

---

[7] Respondents also cite *Hansen v. Sunnyside Products, Inc.* (1997) 55 Cal.App.4th 1497 [65 Cal.Rptr.2d 266]. In that case, the court agreed with the defendant that the product warnings were relevant to their defense to a design defect cause of action, under the risk-benefit test. We see no similar facts here.

physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk." (Rest.2d Torts, § 402A, com. k, pp. 353–354.)

Based on comment k to the Restatement Second of Torts, section 402A, in *Brown v. Superior Court* (1988) 44 Cal.3d 1049 [245 Cal.Rptr. 412, 751 P.2d 470], our Supreme Court found that the ordinary strict liability rules do not apply to prescription drugs. Instead, the Supreme Court held that, "(1) a drug manufacturer's liability for a defectively designed drug should not be measured by the standards of strict liability; (2) because of the public interest in the development, availability, and reasonable price of drugs, the appropriate test for determining responsibility is the test stated in comment k [to Restatement Second of Torts, section 402A] . . . ." (*Id.* at p. 1061.) In California, comment k cases "overwhelmingly involve products such as prescription drugs, vaccines, blood, and medical devices such as intrauterine devices and breast implants." (*Wilkinson v. Bay Shore Lumber Co.* (1986) 182 Cal.App.3d 594, 601 [227 Cal.Rptr. 327].)

Citing the importance of commercial air conditioning in modern society, and their view that the record establishes that refrigerants are unavoidably unsafe when exposed to heat during maintenance, respondents argue that this is the test which should be adopted for sellers of air conditioning refrigerant.

We cannot affirm this judgment on that ground. Application of comment k is based on public policy considerations. (Rest.2d Torts, § 402A; see also *Artiglio v. Superior Court, supra,* 22 Cal.App.4th at pp. 1392–1393.) The evidentiary record (such as it is) on this demurrer would hardly allow us to analyze those considerations and decide the issue. Nor do we believe that it is appropriate for us to consider an issue of this importance when it is raised for the first time in a respondents' reply brief on appeal.

## DISPOSITION

The judgment is reversed, and the matter remanded to the trial court for further proceedings consistent with this opinion. Each party to bear its own costs on appeal.

Turner, P. J., and Kriegler, J., concurred.