Filed 4/8/13  Batton v. Alten Construction, Inc. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **RON BATTON,** | |
| **Plaintiff and Appellant,** | **A135146** |
| **v.** | |
| **ALTEN CONSTRUCTION, INC.,** | **(Marin County** |
| **Defendant and Respondent.** | **Super. Ct. No. CIV1005862)** |

## I.  INTRODUCTION

Plaintiff Ron Batton, an employee of a construction subcontractor, alleges he sustained injuries while descending an unfinished stairway on a construction jobsite. Batton sued the general contractor, defendant Alten Construction, Inc. (Alten), for damages, asserting claims for negligence, negligence per se, and breach of contract (on a third party beneficiary theory).  The trial court entered summary judgment for Alten, holding that *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) and its progeny barred Batton's negligence claims, and that Batton lacked standing to pursue his contract claim.  Batton appeals.  We conclude triable issues of material fact exist as to Batton's negligence claims, but not as to his contract claim.  We affirm in part and reverse in part.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Contracts*

On October 2, 2008, Alten entered a contract with the City of Sausalito (City) to construct a public safety building that would include police and fire stations.  The contract incorporates a document designated "Section 00700[,] General Conditions."

1

Among other matters, Section 00700 addresses the relationships among City, Alten, and other contractors or utility owners. (¶ 6.2.) Alten must "afford all other contractors, utility owners and City . . . proper and safe access to the Site . . . ." (¶ 6.2.A.) Alten also must "coordinate its Work with the work of other separate contractors, City . . . , and utility owners." (¶ 6.2.B.) Paragraph 6.2.D. specifies: "[Alten's] duties and responsibilities under paragraph [*sic*] of this Section 00700 are for the benefit of City . . . and also for the benefit of such other contractors and utility owners working at the Site to the extent that there are comparable provisions for the benefit of [Alten] in the direct contracts between City . . . and such other contractors and utility owners."

Other portions of Section 00700 provide for Alten's control and supervision over the jobsite. Alten must "supervise, inspect, and direct Work competently and efficiently" (¶ 8.1.B.), and "shall have sole care, custody, and control of the Site and its Work areas" (¶ 8.3). Alten is responsible "for initiating, maintaining and supervising all safety precautions and programs in connection with the Work" (¶ 16.2.A.), and must comply with applicable safety laws and regulations (¶ 16.2.B.). Alten is "fully responsible for the safety of its and its Subcontractors' employees, agents and invitees on the Site." (¶ 16.3.B.) Within designated work areas, and with the exception of "routes for ingress and egress over which [Alten] has no right of control," Alten must "provide safe means of access to all places at which persons may at any time have occasion to be present." (¶ 16.3.C.)

On October 16, 2008, Alten entered a subcontract with Galletti & Sons, Inc. (Galletti). The subcontract required Galletti to provide concrete reinforcement (rebar) for the project. Section 22 of the subcontract specifies Galletti is an independent contractor and must comply with applicable laws and regulations. Section 18 of the subcontract, entitled "Safety Practices," provides: "Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards, and statutes with respect to occupational health and safety, the handling and storage of hazardous materials, accident prevention, safety equipment and practices including the accident prevention and safety program of Owner and Contractor. Subcontractor shall conduct inspections to determine that sage

2

[*sic*] working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, regulations, standards and statutes." Galletti's subcontract was solely with Alten; Galletti had no direct contract with City.

On December 1, 2008, Alten entered a subcontract with Kwan Wo Ironworks, Inc. (Kwan Wo). Kwan Wo was to install interior stairways in the project.

During the course of construction, Alten exercised general control over the worksite and the project.

B. *Batton's Injury*

Batton, an ironworker, was employed by Galletti as a foreman. Batton alleges in his complaint that, on August 20, 2009, he "twisted and fell" while descending an unfinished stairway on the construction site and sustained injuries. Batton and his supervisor, Steve Wheeler, completed reports about Batton's injury. The reports state the bottom step of the stairway was 18-24 inches off the ground, and Batton fell when stepping from the bottom step to the ground. Batton received workers' compensation benefits through Galletti.

C. *Proceedings*

1. Alten's Motion

After Batton filed suit, Alten moved for summary judgment or summary adjudication. Alten contended Batton's negligence causes of action failed because Alten "owed no duty of care to [Batton] having contractually and impliedly delegated that duty to [Batton's] employer, [Galletti]." Relying on the *Privette* line of cases limiting the liability of a hirer of an independent contractor for injuries to the contractor's employees, Alten argued its exercise of "general control over the workplace" was insufficient to support liability. As to the breach of contract cause of action, Alten argued Batton lacked standing to pursue third party beneficiary recovery.

In support of its motion, Alten submitted excerpts of the relevant contracts, as well as discovery responses showing Batton knew the stairway was under construction and was aware he needed to use caution when using it, and Galletti did not advise Batton to use caution on or around the stairway. Alten also submitted declarations from Paul Fitzgerald, Alten's project supervisor, and Trevor Simon, the acting supervisor in Fitzgerald's absence on the date of Batton's injury. Fitzgerald and Simon stated they did not control or direct the work of Galletti or Kwan Wo.

2. Batton's Evidence in Opposition

In his opposition, Batton argued that, under *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*), the hirer of an independent contractor may be liable for injuries sustained by an employee of the contractor if the hirer retains control over safety conditions at a worksite and exercises that control in a way that affirmatively contributes to the employee's injuries. Batton argued Alten was liable under the negligent exercise of retained control theory outlined in *Hooker*.

Batton submitted excerpts of deposition testimony by employees of Alten and Kwan Wo about the construction of the stairway and other matters. According to this testimony, after Kwan Wo installed the steel stairway, the stairway still required concrete treads to be poured in the step pans, and a concrete landing to be poured beneath the bottom step, which were outside Kwan Wo's scope of work and fell within Alten's scope of work. No handrail had yet been installed. Kwan Wo employee Wen Situ testified Kwan Wo used caution tape to close off the top and bottom of the stairway, and Situ told Alten the stairs could not be used yet.

Pending completion of the stairway, Alten placed temporary wood blocks in the stair pans and a temporary guardrail on the steps. The wood blocks in the stair pans did not completely fill the pans; there were gaps on the right-hand side of the steps (facing up the stairs). Alten supervisors testified the guardrail and the blocks in the pans were routine safety practices for unfinished stairways. Alten took these measures because Galletti's ironworkers were working off the stairway, using it as "scaffolding" to install rebar on the shear wall adjacent to the stairs. Alten supervisor Fitzgerald testified Galletti

4

was allowed to use the stairway for that purpose, but not as a means to gain access to the second floor.

In addition to the wooden step blocks and the handrail, Kwan Wo employee Situ testified Alten's workers placed wooden planks below the bottom step. Situ testified Alten's workers removed the caution tape Kwan Wo had placed at the top and bottom of the stairway, because Alten's workers needed to use the stairs to put the wood blocks in the steps. When asked on cross-examination whether he personally saw Alten's workers "take off the tape and place it on the ground," Situ responded: "I'm not sure. I cannot be positive."

Batton submitted a declaration in which he stated his employment required him to carry tools and materials and to ascend and descend the unfinished stairway. Batton stated the stairway and one other stairway in the same general condition provided the only means of access to the second floor where Galletti ironworkers were placing rebar. Batton had little experience on this jobsite and had only used the stairway on a few occasions. He "could see that with some wood, someone had attempted to make [the stairway] available for use by all trades on the job." Batton stated: "The stairway where I received my injuries had no caution tape or other warning indicating it was not to be used, I had seen it used by the other trades, and given lack of other access took this as an invitation to use it for access to my work." Batton described his accident: "The stairway was not equipped with a landing, but rather with a plank; its unfinished stair riser pans were not filled with concrete, its riser height and tread depth was therefore not uniform, and it had unprotected sides and edges. While I have no specific recollection, I was probably carrying hand tools or possibly a short piece of rebar. While descending the unfinished stair riser pans which were partially filled with plywood and not with concrete, my foot snagged the edge of the pan causing me to land awkwardly on the plank, much lower than would have been a landing, caused my full weight of about 245 pounds to twist my knee, and causing me to sustain the injuries which have so far led to two surgeries and kept me from returning to my trade."

5

Batton also submitted an expert declaration from Gerald Fulghum, a safety engineer and certified safety professional. Fulghum opined the stairway was unsafe and did not comply with applicable safety regulations or industry custom and practice. The court overruled Alten's objection Nos. 1, 4, 5, 8, 16 and 17, which related to Fulghum's (1) description of the research he conducted into applicable codes and regulations, as well as construction industry practices (¶ 5), (2) opinions as to the scope of Alten's responsibilities based on industry custom and practice and safety regulations (¶¶ 8-9, 12), and (3) opinion the stairway was unsafe and violated the construction industry's custom and practice for worker safety and applicable regulations (¶¶ 20-21). The court sustained objection Nos. 10 through 15, which related to Fulghum's description of the content of codes and safety regulations (¶¶ 14-19), ruling "[i]t is the judge's duty to declare what the applicable law is." The court also sustained objection No. 17, which related to Fulghum's opinion Alten's violations were "a substantial factor in causing . . . Batton's accident" (¶ 21), ruling this was "a factual question for the jury."

In reply, Alten submitted additional deposition excerpts from Kwan Wo employee Situ, who testified he and others used ladders to gain access to the roof of the building.

3. The Trial Court's Order

After hearing argument, the trial court entered a written order granting summary judgment for Alten. The court ruled Batton's negligence causes of action were barred by the *Privette* doctrine, holding Alten "did not undertake to exercise control over the safety of the workplace in a manner that affirmatively contributed to [Batton's] injuries." The court stated "[n]one of the temporary safety measures taken by [Alten] are claimed to have contributed to [Batton's] fall," and "[t]he unfinished nature of the stairway was obvious and was not a latent hazardous condition." Although there was "testimony that [Alten's] employees might have removed the caution tape . . . , that conduct was consistent with use of the stairs as scaffolding, it did not create a latent hazardous condition, and it did not relieve Galletti of the duty to ensure its employees had a safe workplace while they were using the stairs to install the rebar, or while accessing the second floor. Galletti could have instructed its employees to use ladders between the first

6

and second floors instead of the unfinished stairway." The court stated: "Under *Privette* and its progeny, [Alten] has no tort liability for its passive conduct, and nothing [Alten] did relieved Galletti of its 'duty to identify the absence of the safety guards required by Cal-OSHA regulations and to take reasonable steps to address that hazard.' [Citation.]" The court also concluded Batton was not an intended third party beneficiary of the contract between Alten and City.

The court entered judgment for Alten. Batton appealed.

III. DISCUSSION

A. *Standard of Review*

"The rules of review are well established. If no triable issue as to any material fact exists, the defendant is entitled to a judgment as a matter of law. [Citations.] In ruling on the motion, the court must view the evidence in the light most favorable to the opposing party. [Citation.] We review the record and the determination of the trial court de novo." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499; accord, *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 860.) The trial court's stated reasons for granting summary relief are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

B. *Negligence*

1. The *Privette* Doctrine and Liability under *Hooker*

Our Supreme Court has summarized the *Privette* doctrine as follows: "Generally, when employees of independent contractors are injured in the workplace, they cannot sue the party that hired the contractor to do the work. . . . [¶] By hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes to the contractor's employees to ensure the safety of the specific workplace that is the subject of the contract." (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 (*SeaBright*), italics omitted; see *Privette, supra,* 5 Cal.4th at p. 696; *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 256.) Accordingly, "subject to certain exceptions, when a general contractor hires a subcontractor, the general contractor is not liable for injuries that occur to the subcontractor's employees." (*Brannan v. Lathrop*

7

*Construction Associates, Inc.* (2012) 206 Cal.App.4th 1170, 1176 (*Brannan*); accord, *Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 450.)

The Supreme Court described one such exception in *Hooker*. The *Hooker* court considered whether the hirer of an independent contractor could be held liable for injuries to the contractor's employee based on the hirer's "*negligent exercise of retained control*" over safety conditions at a worksite. (*Hooker*, *supra*, 27 Cal.4th at p. 201.) The court held that "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Id.* at p. 202.) The liability of the hirer in such cases is not " ' " 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor," ' " but is direct. (*Id.* at p. 212; see also *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 222, 225 [hirer is directly liable to employee of independent contractor when hirer's provision of unsafe equipment affirmatively contributes to employee's injury].)

Imposing liability based on a hirer's negligent exercise of retained control is consistent with the " 'framework of delegation' " underlying the *Privette* line of cases. (See *Seabright, supra,* 52 Cal.4th at pp. 594, 599-600; *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 671.) "If a hirer entrusts work to an independent contractor, but *retains* control over safety conditions at a jobsite and then negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, the hirer is liable for those injuries, based on its own negligent exercise of that retained control. [Citations.] Because the hirer actively *retains* control, it cannot logically be said to have *delegated* that authority." (*Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439, 1446 (*Tverberg*).)

In *Hooker*, the widow of a deceased crane operator who had been employed by a general contractor hired by the California Department of Transportation (Caltrans) to construct an overpass, sued Caltrans for negligently exercising its retained control over safety conditions at the jobsite. (*Hooker*, *supra*, 27 Cal.4th at p. 202.) The Caltrans

8

construction manual provided Caltrans was responsible for obtaining the contractor's compliance with safety laws and regulations, and Caltrans's onsite engineer had the power to shut the project down because of safety conditions and to remove employees of the contractor for failing to comply with safety regulations. (*Id.* at pp. 202-203.) The crane operator retracted the crane's outriggers to allow Caltrans vehicles and other construction vehicles to use the narrow overpass. (*Id.* at pp. 202, 214.) When the crane operator then attempted to operate the crane without reextending the outriggers, the crane tipped over and the operator was killed. (*Id.* at p. 202.) The plaintiff alleged Caltrans was negligent in permitting traffic to use the overpass while the crane was being operated. (*Id.* at pp. 202-203, 214-215.)

The Supreme Court found the plaintiff in *Hooker* had raised triable issues of material fact as to whether Caltrans retained control over safety conditions at the worksite, but not as to whether Caltrans actually exercised the retained control so as to affirmatively contribute to the death of the plaintiff's husband. (*Hooker*, *supra*, 27 Cal.4th at pp. 202, 215.) The court stated: " '[A] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff. . . .' [Citation.]" (*Id.* at p. 209.) The *Hooker* court stated, however, that an omission may constitute an affirmative contribution in some circumstances: "[A]ffirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Id.* at p. 212, fn. 3.)

Applying these standards, the *Hooker* court found that, although Caltrans *permitted* vehicles to use the overpass while the crane was being operated, and the operator had a practice of retracting the outriggers to permit traffic to pass, Caltrans did

not *direct* the crane operator to adopt that practice. (*Hooker*, *supra*, 27 Cal.4th at pp. 214-215.) Under those circumstances, the court held there was no evidence Caltrans affirmatively contributed to the crane operator's death. (*Id.* at p. 215.) Instead, "[t]here was, at most, evidence that Caltrans's safety personnel were aware of an unsafe practice and failed to exercise the authority they retained to correct it." (*Ibid.*)

2. Triable Issues of Material Fact Preclude Summary Judgment

a. <u>Retention of Control Over Safety Conditions</u>

Batton raised triable issues of material fact as to whether Alten retained control over the safety of the unfinished stairway. (See *Hooker*, *supra*, 27 Cal.4th at pp. 202, 215.) Batton presented evidence that, after Kwan Wo installed the steel stairway, closed it off with caution tape, and told Alten the unfinished stairway was not to be used, Alten took what the trial court referred to as "temporary safety measures" on the unfinished stairway and permitted its use at least for some purposes. There was evidence Alten installed a temporary guardrail, put temporary wood blocks in the stair pans, and placed wooden planks at the bottom of the stairs. Alten's workers may have removed the caution tape.[1]

Alten managers testified the guardrail and the blocks in the pans were routine safety practices for unfinished stairways. Alten took the measures because Galletti's ironworkers were working off the stairway, using it as "scaffolding" to install rebar on the adjacent wall. Alten's supervisor, Fitzgerald, testified the guardrail also was to protect "other trades, you know, just in case someone went up there. It's not a completed stairwell. If they fell off, or whatever. It's basically just for safety purposes because you're going to need it."

---

[1]   As Alten notes, Kwan Wo employee Situ qualified his testimony on this point, stating he was "not sure" and could not be "positive" Alten's workers removed the tape. But the evidence Alten's workers took other measures (the guardrail, blocks in the step pans, and planks below the bottom step) permits an inference they removed the tape to gain access to the stairway to take those measures. In any event, the evidence Alten took the other measures is sufficient to raise triable issues of material fact.

This evidence allows an inference Alten retained control over the safety of the unfinished stairway, took measures to make it usable or available at least for some purposes, and permitted its use at least for those purposes. (See *Tverberg*, *supra*, 202 Cal.App.4th at p. 1448 [general contractor's determination that certain temporary safety measures were sufficient allowed inference that general contractor "affirmatively assumed the responsibility for the safety" of workers in that portion of the worksite].)

Alten asserts *SeaBright* establishes a *conclusive* presumption Alten delegated to Galletti all responsibility for the workplace safety of Galletti's employees. To the extent Alten suggests *SeaBright* precludes a plaintiff from seeking to hold a hirer liable under a theory of negligent exercise of retained control, we disagree. The *SeaBright* court stated that, under *Privette*, a hirer "presumptively delegates" to an independent contractor the hirer's tort law duty to provide a safe workplace for the contractor's employees, including any tort law duty owed to the contractor's employees to comply with safety statutes and regulations. (*SeaBright, supra,* 52 Cal.4th at pp. 600, 601, 603.) But the *SeaBright* court expressly reaffirmed the *Hooker* rule that a hirer may be liable to a contractor's employee if the hirer retains control over safety conditions and negligently exercises that control in a manner that affirmatively contributes to the plaintiff's injury. (*SeaBright*, at pp. 599, 601.)

b. Affirmative Contribution to Injury

Batton also raised triable issues of material fact as to whether Alten exercised its retained control so as to affirmatively contribute to Batton's injury. (See *Hooker*, *supra*, 27 Cal.4th at pp. 202, 215.) A jury could find that Alten, by installing temporary safety measures, exercised control over safety conditions. The evidence also permits an inference Alten exercised its control in a negligent manner, by implementing measures that were inadequate for the safe temporary use of the unfinished stairway. Batton's expert, Fulghum, opined the unfinished stairway was unsafe and violated industry custom and practice for worker safety. Alten's supervisor, Fitzgerald, testified the stairway lacked a proper footing. Batton stated in his declaration that "[t]he stairway was not equipped with a landing, but rather with a plank; its unfinished stair riser pans were not

11

filled with concrete, its riser height and tread depth was therefore not uniform, and it had unprotected sides and edges."

In our view, this evidence supports an inference of affirmative contribution in two ways. First, by installing some temporary safety measures and permitting use of the unfinished stairway without additional measures (such as a temporary bottom step), Alten arguably determined which safety measures were necessary. In *Tverberg*, Division Four of this court concluded that a similar determination by a general contractor allowed an inference of affirmative contribution. In that case, which involved an expansion project at a commercial fuel facility, a subcontractor dug holes for " 'bollards,' concrete posts intended to prevent vehicles from colliding with fuel dispensers." (*Tverberg*, *supra*, 202 Cal.App.4th at p. 1442.) Each hole was four feet wide and four feet deep and was marked with stakes and safety ribbon. (*Ibid.*) The plaintiff, an independent contractor hired by a different subcontractor performing unrelated work near the bollard holes, fell into one of the holes and was injured. (*Id.* at pp. 1442-1443.)

Division Four found the evidence allowed an inference of affirmative contribution in several ways.[2] (*Tverberg*, *supra*, 202 Cal.App.4th at pp. 1447-1448.) One basis for finding affirmative contribution was the general contractor's determination there was no need to cover or barricade the bollard holes. (*Id.* at p. 1448.) The general contractor's employee in charge of the jobsite testified he concluded the stakes and safety ribbon constituted sufficient protection. (*Ibid.*) The appellate court, noting its duty on summary judgment to construe the evidence in favor of Tverberg, stated the evidence "allows an inference that [the general contractor] affirmatively assumed the responsibility for the safety of the workers near the bollard holes, and discharged that responsibility in a negligent manner, resulting in injury." (*Ibid.*) Similarly, the evidence in this case, construed in favor of Batton, allows an inference Alten affirmatively assumed the responsibility for the safety of workers using the unfinished stairway, and discharged that

___

[2]   The California Supreme Court reversed an earlier decision by Division Four in *Tverberg* that involved different issues. (See *Tverberg v. Fillner Construction, Inc.* (2010) 49 Cal.4th 518, 521-522, 528-529; *Tverberg*, *supra*, 202 Cal.App.4th at p. 1444.)

responsibility in a negligent manner, resulting in Batton's injury. (See *ibid.*; see also *Browne v. Turner Construction Co.* (2005) 127 Cal.App.4th 1334, 1345-1346 [the defendants undertook to provide safety systems and devices and then withdrew them]; *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120, 1128-1129, 1133-1134 [under *Hooker*, omission can constitute affirmative contribution].)

Alten argues *Tverberg* is inapposite because the plaintiff in that case asked the general contractor to cover the bollard holes prior to his injury, while Batton did not raise with Alten any concerns about the safety of the unfinished stairway. But, as noted, the *Tverberg* court found several grounds for a finding of affirmative contribution. (*Tverberg*, *supra*, 202 Cal.App.4th at pp. 1447-1448.) One of these was based on Tverberg's request that the general contractor cover the bollard holes. The general contractor's response that the necessary equipment was not available allowed an inference that the general contractor agreed to cover the holes and then failed to do so. (*Id.* at p. 1448.) A separate potential basis for liability in *Tverberg* was the general contractor's determination that the stakes and safety ribbons provided sufficient protection (and therefore it was not necessary to cover or barricade the bollard holes). (*Ibid.*) We relied on this factor in our discussion above.

A second basis on which a reasonable jury could find affirmative contribution in this case is that the temporary safety measures Alten took contributed to Batton's injury. The wood blocks Alten placed in the stair pans did not completely fill the pans; instead, there were gaps on one side of the steps. Batton's declaration supports an inference the unfilled condition of the stair pans contributed to his injury. Batton stated the "unfinished stair riser pans were not filled with concrete, its riser height and tread depth was therefore not uniform, and it had unprotected sides and edges. . . . While descending the unfinished stair riser pans which were partially filled with plywood and not with concrete, my foot snagged the edge of the pan causing me to land awkwardly on the plank . . . ." As Alten notes, Batton does not provide a detailed explanation of precisely how his foot snagged the edge of the pan. But his declaration, which we construe in his favor as the party opposing summary judgment (see *Shin v. Ahn, supra,* 42 Cal.4th at

13

p. 499), is sufficient to suggest that, because the pan was not completely filled, Batton caught his foot, tripped, or lost his footing. This evidence allows an inference that Alten, by placing wood blocks that only partially filled the pans, negligently exercised its retained control over the safety of the stairway in a manner that affirmatively contributed to Batton's injury.

Alten asserts Batton's statement he snagged his foot is "simply not credible." Alten argues this statement is inconsistent with the injury reports prepared by Batton and his supervisor, Wheeler. The reports state the bottom step of the unfinished stairway was 18 to 24 inches off the ground, and Batton fell when stepping down from the bottom step to the ground; one of Wheeler's reports states the height of the drop "caused [Batton] to misjudge the ground causing him to fall." The brief descriptions in the reports do not mention Batton snagged his foot on the stair pan.

A court generally may not weigh the credibility of a declaration submitted in opposition to summary judgment. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065; see also *Estate of Housley* (1997) 56 Cal.App.4th 342, 359-360.) The short descriptions of Batton's accident in the reports do not establish that the more detailed account in his declaration is "facially incredible as a matter of law" so as to justify disregarding it on summary judgment. (*Estate of Housley, supra,* 56 Cal.App.4th at p. 360.)

Alten also states Batton "refused to submit to a deposition." Whatever the merits of the parties' dispute on this issue (which we need not address),[3] it provides no basis for this court to disregard Batton's declaration. Alten did not object to, and the trial court did not exclude, the portion of Batton's declaration describing his accident (based on the deposition dispute or any other ground), so we will consider it. (See *Merrill v. Navegar,*

---

[3] Alten did not depose Batton prior to moving for summary judgment in October 2011; the summary judgment hearing was set for February 15, 2012. On January 11, 2012, Alten noticed Batton's deposition for January 25; Batton's counsel responded he would be unavailable; Batton did not appear for the deposition; and Alten filed a motion to compel, which was set for April 2012. When the court granted summary judgment, it vacated the hearing on the motion to compel.

14

*Inc.* (2001) 26 Cal.4th 465, 476 [reviewing court considers all evidence submitted by parties in connection with summary judgment motion, except evidence the trial court properly excluded].)

Alten's remaining arguments do not persuade us summary judgment is proper. Alten cites *Brannan*, but that case is distinguishable. In *Brannan*, Division One of this court held a general contractor was not liable under *Hooker* to a masonry subcontractor's employee who was injured trying to gain access to his work area by crossing a plaster scaffold placed by another subcontractor. The general contractor did not direct the plaintiff's work and did not tell him to gain access the way he did. (*Brannan*, *supra*, 206 Cal.App.4th at pp. 1178-1179.) There also was no evidence the general contractor knew before the plaintiff's injury that he or other workers were climbing over the scaffolding in the manner they did, or that the practice posed a safety hazard. (*Id.* at p. 1179.) Under those circumstances, the general contractor's acts of scheduling jobsite activities, allowing the scaffolding to remain in place, and failing to call a rain day did not constitute affirmative contribution under *Hooker*. (*Brannan*, at pp. 1178-1180.) Here, in contrast to *Brannan*, Alten itself took steps to modify and make usable the stairway installed by Kwan Wo, and was aware it was being used. We conclude Alten's actions and the other evidence presented raise triable issues of fact as to whether Alten affirmatively contributed to Batton's injury.

Alten contends Galletti breached its tort and contractual duties by failing to provide Batton alternative means of access to the second floor (such as ladders), and Batton was negligent in using the conspicuously unsafe stairway.[4] But the alleged negligence of other parties does not preclude a finding that Alten's negligent exercise of retained control affirmatively contributed to Batton's injuries. (See *McKown v. Wal-Mart Stores, Inc., supra,* 27 Cal.4th at pp. 222-223, 225-226 [hirer liable to employee of independent contractor when hirer's provision of unsafe equipment

---

[4]   Batton agrees the stairway was not a latent hazardous condition of which Alten had a duty to warn Batton, and he does not seek to impose liability on that basis. (See *Kinsman v. Unocal Corp., supra,* 37 Cal.4th at pp. 674-675.)

15

affirmatively contributed to employee's injury; "[a]dmittedly, [hirer] was not the only one at fault, but then the jury's verdict reflected that"].)

Alten also notes Fitzgerald's testimony that Galletti's workers were allowed to use the stairway as scaffolding, but not to gain access to the second floor. But the evidence allows an inference the use of the stairway was not so limited. Fitzgerald testified "we had danger tape" at the top and bottom of the stairs, and "[n]o one was to use [the stairway] as access," but he acknowledged the tape had been removed and was lying on the ground. Fitzgerald also suggested others might have used the stairway, stating the guardrail was for the protection of "other trades . . . just in case someone went up there," or for "[t]rades and whoever walks onto the site." Batton stated in his declaration that he saw "other trades" using the stairway. Batton also presented evidence the city inspector used the stairway to gain access to the second floor, and Alten's backup supervisor may have done so. A reasonable jury could conclude use of the stairway was not limited to a specific group of workers performing a specific task.

Batton has raised triable issues of material fact as to whether Alten is liable on a theory of negligent exercise of retained control.[5] Accordingly, Alten is not entitled to summary adjudication as to Batton's negligence causes of action.[6]

---

[5] Because the evidence in the record (including Batton's declaration, the deposition excerpts, and the portions of Fulghum's declaration admitted by the trial court) raises triable issues of material fact, we need not address Batton's argument the trial court erred by sustaining objections to other portions of Fulghum's declaration, such as those describing the content of statutory and regulatory provisions (¶¶ 14-19), and setting forth Fulghum's opinion that Alten's actions caused Batton's accident (¶ 21).

[6] Although stated as a separate cause of action in Batton's complaint, we construe his negligence per se theory as part of his negligence cause of action. (See *Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1353, fn. 2 ["[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence. [Citation.]"]; accord, *Johnson v. Honeywell Internat. Inc.* (2009) 179 Cal.App.4th 549, 555.) As to both negligence "causes of action," Alten sought summary adjudication on the basis of the delegation-of-duty rationale we discuss above. Triable issues of material fact preclude summary adjudication on that issue.

16

C. *Contractual Claim as Third Party Beneficiary*

Batton argues Alten owed him a contractual duty to keep the workplace safe, contending he was a third party beneficiary of Alten's general contract with City. For a third party to qualify as an *intended beneficiary* under a contract, there must be evidence the contracting parties intended to benefit that third party, "and their intent must appear from the terms of the contract. [Citations.] While the [intended] beneficiary need not be named in the contract, he must be a member of a class referred to and identifiable therein. [Citations.]" (*Kirst v. Silna* (1980) 103 Cal.App.3d 759, 763.) Other persons, termed *incidental beneficiaries,* may fortuitously benefit from the performance of the contract, but they have no legal right to enforce its terms. (*Ibid;* see also 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 689, p. 776.)

Here, the general contract states it is an agreement between Alten and City. The trial court correctly concluded paragraph 6.2.D. of the General Conditions in Section 00700 (a provision relied on by Batton in opposing summary judgment) does not support, and indeed undercuts, Batton's claim he is an intended beneficiary of the contract. Paragraph 6.2.D. provides: "[Alten's] duties and responsibilities under paragraph [*sic*] of this Section 00700 are for the benefit of City . . . and also for the benefit of such other contractors and utility owners working at the Site to the extent that there are comparable provisions for the benefit of [Alten] *in the direct contracts between City . . . and such other contractors and utility owners*." (Italics added.) It is undisputed Galletti's subcontract was only with Alten; Galletti had no direct contract with City. Paragraph 6.2.D. confers no enforcement rights on Galletti or its employees.

Alten argues further that paragraph 6.2.D. specifies the intended beneficiaries of the General Conditions (Section 00700) as a whole, thus precluding Batton from relying on other provisions to show he is an intended beneficiary. Paragraph 6.2.D. arguably is ambiguous on this point. It states Alten's "duties and responsibilities under paragraph [*sic*] of this Section 00700" are for the benefit of City and other contractors that have direct contracts with City. Paragraph 6.2.D. thus may only designate the intended

17

beneficiaries of some unspecified paragraph of Section 00700, rather than of Section 00700 as a whole.

We need not resolve this question, because the other provisions cited by Batton do not support his claim he is an intended beneficiary. Batton cites paragraphs 8.1.B. and 8.3 of the General Conditions, which provide Alten must "supervise, inspect, and direct Work competently and efficiently" (¶ 8.1.B.), and "shall have sole care, custody, and control of the Site and its Work areas" (¶ 8.3). These and related provisions allocate, as between Alten and City, control of the site and the work. Alten must supervise and direct the work to ensure it complies with contractual requirements (¶ 8.1.B.); the work is to be performed under City's representative's "general observation and administration" (¶ 8.2.A.); and Alten must provide access for City and its employees to inspect and perform work (¶ 8.3). These provisions provide no basis for finding Batton is an intended beneficiary.

Batton also cites paragraphs 16.3.B. and 16.3.C. of the General Conditions, which provide Alten is to be "fully responsible for the safety of its and its Subcontractors' employees, agents and invitees on the Site" (¶ 16.3.B.), and must "provide safe means of access to all places at which persons may at any time have occasion to be present" (¶ 16.3.C.). But Batton cites no authority holding these or similar provisions in a general contract establish a subcontractor's employee is an intended beneficiary entitled to sue the general contractor for breach of contract. Indeed, courts have refused to find similar contractual provisions established a hirer had a contractual duty to an injured employee of a subcontractor. In *Zamudio v. City and County of San Francisco, supra,* 70 Cal.App.4th at page 453, this court held a contractual provision delegating the owner's safety responsibilities to the general contractor did not create a duty of care upon the general contractor toward the subcontractor's employee. In *West v. Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296, 302 (*West*), the court held provisions in the main contract between the general contractor and the state requiring the contractor to comply with safety laws, provide safeguards, and take actions to protect employees on the job were *not* intended to create a third party beneficiary contract giving employees of the

18

subcontractor the right to sue at common law in addition to their worker's compensation rights. Instead, the provisions were intended to "underline the fact that [the general contractor], by subcontracting, was not to be relieved of any obligation owed to the state and the public." (*Ibid.*) The *West* court reached this conclusion even though a clause in the main contract provided that " 'all persons engaged in the work of construction will be considered as employees of the [c]ontractor.' "[7] (*Ibid.*) Here, the cited provisions of the general contract, whatever their relevance to Batton's negligence cause of action, do not establish Batton is an intended beneficiary entitled to pursue an independent cause of action for breach of the general contract.

IV. DISPOSITION

The order granting summary judgment and the judgment are reversed. The trial court is directed to enter a new order denying summary judgment, denying summary adjudication as to the negligence causes of action, and granting summary adjudication as to the contract cause of action. The parties shall bear their own costs on appeal.

---

[7] Batton, citing Alten's temporary safety measures, notes a court may consider the subsequent conduct of the parties in construing an ambiguous contract. (See *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1024.) We conclude the contractual provisions at issue are unambiguous and do not make Batton an intended beneficiary of the contract.

19

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.